UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARRIE M. PADDOCK,

                                    Plaintiff,

                                                                DECISION AND ORDER

                                                                02-CV-6275L

                  v.

SUNY BROCKPORT,

                                    Defendant.
_____

## INTRODUCTION

Plaintiff, Carrie Paddock ("Paddock" or "plaintiff"), commenced this action, *pro se*, against her former employer, the State University at New York College at Brockport ("SUNY") based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. Plaintiff, who is white, claims that she was subjected to a race-based hostile work environment, and then terminated from SUNY because of her race. Plaintiff seeks equitable and monetary relief from SUNY for the alleged discrimination, including reinstatement of her job, health and dental benefits for life, free tuition, books and parking at all SUNY schools for life, and $25 million in compensatory damages.

Both plaintiff and defendant have moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons discussed below, plaintiff's motion (Dkt. #77) is denied, SUNY's cross-motion (Dkt. #90) is granted, and plaintiff's complaint is dismissed.

## FACTUAL BACKGROUND

In April of 2000, plaintiff began working as a Keyboard Specialist in the Outreach Career Placement office ("Outreach office") of the Rochester Educational Opportunity Center ("REOC") at SUNY. Her immediate supervisor was Sheryl Gonzalez. Almost immediately after plaintiff began working for Gonzalez, there developed some tension between them. Plaintiff alleges that Gonzalez, a Latino, created a hostile work environment for plaintiff by making a few comments that she believed were statements reflecting an animus toward whites. Plaintiff also claims that Gonzalez treated her rudely and unprofessionally.

Gonzalez, on the other hand, denies that she held any discriminatory animus against plaintiff on account of her race. Instead, Gonzalez maintains that, shortly after plaintiff began working for her, she found plaintiff to be "an unusual person" who could not work independently or efficiently and did not respond well to constructive criticism.

On May 12, 2000, Gonzalez gave plaintiff a written review that was critical of her performance. Plaintiff believed the criticism to be unfair and wrote a response to the review defending her conduct, which she gave to Gonzalez and the human resources office. Shortly thereafter, plaintiff complained to human resources about the allegedly race-related comments that

Gonzalez made. Plaintiff began taking steps to obtain a new position at SUNY at a different location on campus that would be away from Gonzalez.

In June 2000, Robert Smith, who is African-American, began working at SUNY as the Associate Dean of Enrollment Management and Student Life at REOC. Smith was responsible for overseeing, among other things, the Outreach office. Shortly after taking the helm, Smith learned that Gonzalez was not satisfied with plaintiff's performance. Then, in the beginning of July, plaintiff complained to Smith that Gonzalez had made what plaintiff perceived to be racist statements. Smith circulated a memorandum to the department reiterating SUNY's non-discrimination and harassment policy, attached a copy of that policy, and directed all staff to read and comply with it. He also spoke with Gonzalez about the incidents with plaintiff and counseled her about being sensitive to use of certain language in the office. In addition, within three weeks of receiving plaintiff's complaint, Smith offered plaintiff a new position in the Welcome Center of REOC where she no longer would report directly to Gonzalez. Plaintiff took this position, despite its physical proximity to Gonzalez, and stopped her search for a new job on a different part of campus away from Gonzalez.

In August of 2000, plaintiff began working in the Welcome Center under a new supervisor, Lisa Gerst, who is African-American. Plaintiff claims that Gerst started ignoring her as well after Gerst and Gonzalez "became close." Plaintiff also maintains that Gonzalez, with whom she still came into contact in the new position, continued to be hostile toward her. According to plaintiff, Gonzalez continued to speak to her in a threatening or confrontational tone, and attempted to start arguments with her. Other times, Gonzalez ignored her completely.

SUNY maintains that plaintiff's performance continued to be problematic while working in the Welcome Center. Smith claims that he received complaints from students or prospective students who visited the Welcome Center that plaintiff had been rude to them or spoke to them inappropriately. Smith alleges that he spoke with plaintiff no less than six times about those complaints, and that plaintiff became defensive or blamed the students for being rude in the first instance. According to Smith, plaintiff "just didn't seem to get it." Smith did not have confidence that plaintiff was learning from these discussions or would modify her behavior. On October 26, 2000, Smith terminated plaintiff, who was at the end of her six-month probationary term, because her performance "did not suggest a high enough probability of future success working in the Welcome Center."

Plaintiff denies that any such complaints were made or that Smith ever spoke with her about her communication with students. Plaintiff maintains instead that Smith must have been motivated by her race because she believed that she was performing her job well.

## DISCUSSION

### I. Summary Judgment in Discrimination Cases

The general principles regarding summary judgment[1] apply equally to discrimination actions.

---

[1] When deciding a motion for summary judgment brought pursuant to FED. R. CIV. P. 56, a court's responsibility is to determine whether there are issues to be tried. *Duse v. Int'l Bus. Machs. Corp.*, 252 F.3d 151, 158 (2d Cir.2001). Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.' . . . An issue of fact is 'genuine' if the

(continued...)

*See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993))(reiterating "that trial courts should not 'treat discrimination differently from other ultimate questions of fact.'"). Although courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, *see Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988); *Montana v. First Fed. Sav. and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to ... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985)(summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would act as a talisman to defeat an otherwise valid motion).

Moreover, although courts must construe plaintiff's *pro se* pleadings liberally and interpret them as raising the strongest arguments that they suggest, *see Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994), "proceeding *pro se* does not otherwise relieve [plaintiff] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.*, No. 00 Civ. 8594, 2003 WL 102853,*5 (S.D.N.Y. Jan. 9, 2003)(citing cases).

## II.  Hostile Work Environment

In order to prevail on a claim that racial hostility caused a hostile work environment in violation of Title VII, plaintiff must establish two elements.  First, plaintiff must show that her

---

[1](...continued)
evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"
*Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir.2001)(quoting *Anderson*, 477 U.S. at 248); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

workplace was permeated with "discriminatory intimidation, ridicule, and insult ... that [wa]s sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)(internal citations and punctuation omitted). Second, plaintiff must show that a specific basis exists for imputing the conduct that created the hostile environment to the employer.  *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir.2003); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir.2002); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997).

To meet the first requirement, plaintiff must demonstrate "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000)(internal punctuation omitted).  Plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

In *Harris*, the Supreme Court set forth a non-exhaustive list of factors relevant to determining whether a given workplace is permeated with discrimination so "severe or pervasive" as to support a Title VII claim. These include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a "mere offensive utterance"; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted to the plaintiff.  *Harris*, 510 U.S. at 23.  Importantly, "[i]n order to meet [her] burden,

the plaintiff must show more than a few isolated incidents of racial enmity." *Williams v. Westchester*, 171 F.3d 98, 100 (2d Cir.1999).

The Second Circuit has instructed that the Court should consider the totality of the circumstances in determining whether plaintiff has submitted evidence sufficient to support a finding that a hostile work environment relating to discrimination existed. *See Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir.1997) (citing *Harris*, 510 U.S. at 23).

Applying these principles, I find that plaintiff's claim for hostile work environment must fail. Plaintiff bases her claim to a great extent on three statements, referenced below, that Gonzalez allegedly made which plaintiff believes were racist:

- Gladys Pagon, a Latino, was the person plaintiff replaced in the Outreach office. On or about May 1, 2000, Gonzalez commented that she regretted that Pagon was leaving because Pagon was bilingual and could communicate with the Spanish-speaking students served by the office. Gonzalez lamented that SUNY had to fill the position off of the civil service list, that the candidate list was short, and that all the candidates were white (and, therefore, non-Spanish-speaking);

- On May 31, 2000, an African-American began working in the Outreach office as a new WEP worker.[2] At that time, there were three other WEP workers working in the office, all of whom were Puerto Rican. Gonzalez commented in the presence of plaintiff and the four WEP workers, "I guess we aren't the Puerto Rican Office anymore, you have to speak English here."

- Plaintiff overhead Gonzalez say during a private phone call in her office that, "I got me a white boy," referring to the fact that Gonzalez was married to a white man.

First, I am not persuaded that any reasonable jury could conclude that the above comments were evidence of any race-based discriminatory animus against whites. Objectively, these statements are innocuous and do not convey animus toward whites as a class. The fact Gonzales referred to her

---

[2] It is not clear from the record what a "WEP" means.

own husband as a "white boy" is descriptive and hardly reflects any animus.  Gonzalez's comments about Pagon simply reflect a supervisor's sorrow that a bilingual valued employee was leaving. Similarly the comment made about not being a "Puerto Rican Office" allegedly made when a *black* woman joined the group is also mild and evinces no hostility toward whites.

Second, even if there were some meager evidence suggesting that Gonzalez's statements or conduct toward plaintiff was based on her race, I find that the instances discussed above are insufficient as a matter of law to meet the objective component of a hostile work environment claim. The conduct about which plaintiff complains does not rise to the requisite level to be actionable under Title VII.  "Isolated, minor acts or occasional episodes do not warrant relief . . . a plaintiff must still prove that the incidents were 'sufficiently continuous and concerted' to be considered pervasive or that a single episode is 'severe enough' to establish a hostile working environment." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir.1999) (citing *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 437 (2d Cir.1999) (internal quotations omitted).  I conclude as a matter of law that the conduct about which plaintiff complains does not objectively evince any animus toward whites and is not sufficiently frequent, continuous or concerted to make out a hostile work environment claim.

Third, even when these incidents are considered in conjunction with plaintiff's other allegations that Gonzalez was rude to her, gave her threatening looks, and spoke to her in a confrontational tone, plaintiff still has not made out a hostile work environment. "Hostile" work environment has a particular meaning in the field of employment discrimination.  Conduct is deemed "hostile" if it relates to discriminatory conduct, *i.e.* involves treating a particular employee or class

of employees differently from others.  A "hostile" work environment is not synonymous with an unpleasant, harsh, combative or difficult work environment.  The nation's workplace is most likely populated with rude supervisors. No doubt they use insensitive language toward and can be abrupt with subordinates. Such evidence, though, is insufficient to make out a claim for *race* discrimination. "Title VII is not a 'general civility code.'" *Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir.1999) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).  Although Title VII "protects employees from improper discriminatory intimidation[,] it does not reach so far as to protect plaintiffs from undiscriminating intimidation by bullish and abusive supervisors." *Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234, 250 (S.D.N.Y.2000).

Furthermore, there is no evidence that Gonzalez ever made any racial slurs or used any racial epithets directed toward plaintiff or any members of the white race.  In addition, plaintiff does not allege that Gonzalez was physically threatening or made humiliating racial comments directed toward her.  There is also evidence in the record that Gonzales and SUNY did not hold racial animus against whites. There is no dispute that plaintiff was replaced by a white woman, and that Gonzalez's most recent secretary was white. Gonzalez is also married to a white man.

At most, plaintiff has shown that Gonzalez did not like her as an employee (something not prohibited), but there is insufficient evidence that Gonzalez's dislike was based on the fact that plaintiff was white.  Plaintiff just assumes so. Plaintiff, therefore, cannot meet the objective component of a hostile work environment claim. No reasonable jury could find, based on the allegations made by plaintiff, that the workplace environment was permeated with such discriminatory intimidation, ridicule, and insult by Gonzalez based on plaintiff's race that the terms

and conditions of plaintiff's employment were altered. *See Kotcher v. Rosa and Sullivan Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir.1992)("The incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief."); *Benette v. Cinemark U.S.A., Inc.*, 295 F.Supp.2d 243 (W.D.N.Y.2003) (isolated comments, if proven, were not sufficiently severe or pervasive to create hostile work environment); *see also Alfano*, 294 F.3d at 379-81 (collecting cases) (reversing jury verdict for plaintiff on hostile work environment claim where five incidents were insufficient to meet severity or pervasiveness standard).[3]

## III.  Plaintiff's Termination

After reviewing the evidence submitted on the motions, I believe that SUNY is entitled to summary judgment on plaintiff's claim that she was terminated because she was white.  The reason is simple: plaintiff has failed to raise a material issue of fact regarding SUNY's proffered reasons for firing her that warrant a trial, yet alone summary judgment in her favor as a matter of law.

The Court analyzes discrimination claims in accordance with the familiar *McDonnell Douglas* burden-shifting paradigm. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973);

---

[3] In addition, summary judgment is warranted on plaintiff's hostile work environment claim because SUNY exercised reasonable care to prevent and correct promptly any allegedly harassing behavior.  *See Mack* , 326 F.3d at 122 (plaintiff must show that a specific basis exists for imputing the conduct that created the hostile environment to the employer).  There is no dispute that, within three weeks of complaining about Gonzalez, Smith transferred plaintiff to a different department within REOC where she no longer would report directly to Gonzalez.  In addition, Smith circulated a memorandum to the department reiterating SUNY's non-discrimination and harassment policy, attached a copy of that policy, and directed all staff to read and comply with it.  He also spoke with Gonzalez about the incidents with plaintiff.  SUNY, therefore, has proven that it is entitled to summary judgment because it exercised reasonable care to prevent and correct promptly any allegedly harassing behavior.  *See Burlington Indus.*, 524 U.S. at 765.

*see also Reeves*, 530 U.S. at 148.[4]  For the purposes of the motion, although it is not without doubt,

I will assume that plaintiff has made out a *prima facie* case under Title VII concerning her

discrimination claim that she was fired based on her race.[5]  I conclude, however, that plaintiff has

failed to adduce sufficient evidence to call into question the legitimacy of the reasons advanced by

SUNY for terminating her.  Plaintiff's evidence consists solely of her own conclusory assumption

that her race must have been the reason for her termination, and that SUNY's reasons – plaintiff's

poor performance and lack of communication skills – were false and merely a pretext for

discrimination.

In support of its motion, SUNY has established, through the affidavits of Sheryl Gonzalez

and Robert Smith, that plaintiff had performance problems throughout her probationary tenure at

SUNY.  As early as May of 2000, plaintiff received a critical performance review by Gonzalez.

SUNY maintains that plaintiff was unable to take constructive criticism and failed to recognize that

she was being evaluated and counseled about how to perform her job better.  Plaintiff continued to

experience problems even after Smith transferred her into a new position in the Welcome Center.

_____

[4]  First, plaintiff must establish a *prima facie* case of discrimination.  The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory business rationale for its actions. "If the defendant has stated a neutral reason for the adverse action, 'to defeat summary judgment…the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based on discrimination.'" *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir.2004)(quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir.1997)).

[5]  To state a *prima facie* case of discrimination under Title VII based on race or gender, plaintiff must show: (1) that she belonged to a protected class; (2) that she was qualified for the position he held; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Feingold*, 366 F.3d at 152.

Smith states in his sworn affidavit that he received numerous complaints from students or prospective students who visited the Welcome Center and interacted with plaintiff.  Although Smith counseled plaintiff on a number of occasions, she did not modify her behavior, and instead she became defensive or blamed the students for being rude in the first instance.  Smith, who was the sole decision-maker here, states that he did not have confidence that plaintiff was learning from these discussions or would modify her behavior.

In October of 2000, plaintiff's six-month probation period was coming to an end.  Smith, who apparently was unfamiliar at that time with the civil service system, sent a request to the Director of Human Resources, Robert Meade, asking to extend plaintiff's probationary period.  According to Smith, plaintiff had been in the Welcome Center job for less than six months, and he wanted more time to assess whether she was capable of successfully doing the job.  Meade informed Smith that under CSEA union rules it was too late to extend plaintiff's probationary period.  Meade told Smith that his only options at that point were to hire plaintiff permanently or to terminate her.  Smith decided ultimately to terminate plaintiff because her performance "did not suggest a high enough probability of future success working in the Welcome Center." (Smith Decl., Dkt. #91, ¶22).

Through this evidence, SUNY has established a non-discriminatory business reason for terminating plaintiff.  There is no question that poor performance is a legitimate business reason to fire an employee.   Plaintiff's subjective opinion about her own performance is insufficient to give rise to a triable issue of fact regarding pretext. *See Holt v. KMI-Cont'l, Inc.*, 95 F.3d 123, 130 (2d Cir.1996) (plaintiff's personal belief regarding her own qualifications is inadequate to raise a triable issue of fact regarding motive of the employer for its employment action); *Viola v. Philips Med. Sys.*

*of N.A.*, 42 F.3d 712, 718 (2d Cir.1994) (an employee's disagreement with an employer's negative

performance evaluation is not enough to support a discrimination claim).

The record is devoid of any evidence that Smith was motivated by *racial animus* toward

plaintiff.   It is undisputed that plaintiff was replaced by another white employee after she was

terminated. This too weighs heavily against an inference of discrimination. *See Bampoe v. Coach

Stores, Inc.*, 93 F. Supp. 2d 360, 371 (S.D.N.Y. 2000); *Ticali v. Roman Catholic Diocese of

Brooklyn*, 41 F. Supp. 2d 249, 262 (E.D.N.Y. 1999).

Moreover, plaintiff's theory that the decision to terminate her must have been made for a

discriminatory reason also is not enough to overcome SUNY's showing.   That is pure speculation.

It is well-settled that "[f]or a plaintiff in a discrimination case to survive a motion for summary

judgment, he or she must do more than present conclusory allegations of discrimination . . . he or

she must offer concrete particulars to substantiate the claim." *Alfieri v. Sysco Food Servs.*, 192

F.Supp.2d 14, 20 (W.D.N.Y.2001) (internal citations and punctuation omitted).   Plaintiff, however,

has offered no concrete particulars that her race was the reason she was fired. *See Wado v. Xerox

Corp.*, 991 F. Supp. 174, 197 (W.D.N.Y. 1998), *aff'd sub nom. Smith v. Xerox Corp.*, 196 F.3d 358

(2d Cir. 1999); *see also Meiri*, 759 F.2d at 998 ("To allow a party to defeat a motion for summary

judgment by offering purely conclusory allegations of discrimination, absent any concrete

particulars, would necessitate a trial in all [discrimination] cases."). More than speculation and

surmise, though, is required to defeat a summary judgment motion. *Sasannejad v. Univ. of

Rochester*, 329 F.Supp.2d 385, 393 (W.D.N.Y. 2004); *Lee v. Coughlin*, 902 F.Supp. 424, 429

(S.D.N.Y.1995)(a "*pro se* party's 'bald assertion,' completely unsupported by evidence, is not

sufficient to overcome a motion for summary judgment")(citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991)).

It is not the Court's role to decide whether SUNY made a bad employment decision when it terminated her. *Richane v. Fairport Cent. Sch. Dist.*, 179 F.Supp.2d 81, 89 (W.D.N.Y.2001) (federal discrimination statutes "prohibit[] discrimination, not poor judgment"); *see also Montana*, 869 F.2d at 106 (federal courts do not have a "roving commission to review business judgments") (quoting *Graefenhain v. Pabst Brewing Co.*, 827 F.2d 13, 21 n. 8 (7th Cir.1987)); *Meiri*, 759 F.2d at 995 (courts "must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process"); *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir.1992)("[c]ourts may not sit as super personnel departments, assessing the merits – or even the rationality – of employers' non-discriminatory business decisions").

Rather, the issue is whether SUNY based its decision to fire plaintiff on illegal, discriminatory reasons. Plaintiff has pointed to nothing in the record to suggest that there were discriminatory reasons for firing her. Accordingly, SUNY is entitled to judgment as a matter of law on plaintiff's claim that she was terminated because of her race.

## IV. Retaliation

Plaintiff's *pro se* form complaint also alleges that she was terminated in "retaliation" for complaining about discrimination or harassment directed toward her. Neither plaintiff's nor defendant's motions address whether plaintiff claims retaliation against SUNY. Nevertheless, construing plaintiff's *pro se* pleadings broadly, as I must, plaintiff alleges that she was terminated because she complained to Smith and SUNY's Human Resources department in July of 2000 that

- 14 -

Gonzalez was discriminating against her. I find that summary judgment is warranted on this claim to the extent plaintiff makes such a claim.

First, plaintiff did not exhaust her administrative remedies with respect to any retaliation claim by raising it in the charge of discrimination she filed with the State Division on Human Rights. *See Legnani v. Alitalia Linee Aeree Italiane*, 274 F.3d 683, 686 (2d Cir.2001) ("Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII ... statutory scheme[ ] and, as such, a precondition to bringing such claims in federal court."); *see also Jackson v. Nor Loch Manor Healthcare Facility*, 297 F.Supp.2d 633, 635 (W.D.N.Y.2004).

Second, plaintiff has failed to raise an issue of fact regarding the legitimate business reasons SUNY offered for firing her. There is no evidence in the record that Smith's decision to terminate plaintiff was based on any retaliatory motive. The fact that plaintiff complained about harassment by her supervisor may be sufficient to state a *prima facie* case of retaliation. That by itself, however, is not enough to raise a question of fact on this record regarding the legitimate, non-retaliatory reasons given by SUNY for firing plaintiff. It is undisputed that Smith and SUNY responded to plaintiff's complaints about Gonzalez with immediate remedial action. They gave plaintiff a different position in which she no longer reported directly to the alleged harasser. It makes little sense that three months after moving plaintiff into a new position as a result of her complaints, Smith would decide to terminate her because she had voiced those complaints. I find, therefore, that plaintiff failed to raise an issue of fact regarding whether SUNY's proffered business reason (poor performance) was merely a pretext to cover improper retaliation.

**CONCLUSION**

Plaintiff's motion for summary judgment (Dkt. #77) is denied.   Defendant SUNY Brockport's motion for summary judgment (Dkt. #90) is granted, and plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
          March 7, 2006.

- 16 -